O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WAYNE CHARLES and FORT SELF STORAGE, | ) ) | CASE NO.: CV 10-7260 ABC (PLAx) |
| Plaintiffs, | ) ) ) | ORDER RE: CITY'S MOTION TO DISMISS COMPLAINT AND REQUEST FOR |
| v. | ) ) | INJUNCTIVE RELIEF AND MOTION FOR A MORE DEFINITE STATEMENT |
| CITY OF LOS ANGELES, a California municipal corporation, | ) ) ) ) | |
| Defendant. | ) ) ) | |

Pending before the Court is Defendant City of Los Angeles's (the "City's") Motion to Dismiss Complaint and Request for Injunctive Relief and Motion for a More Definite Statement, filed on November 11, 2010.  (Docket No. 21.)  Plaintiffs Wayne Charles and Fort Self Storage, Inc. ("Plaintiffs") opposed on November 15, 2010 and the City replied on November 22, 2010.  This matter is set for hearing on Monday, December 6, 2010 at 10:00 a.m., but the Court finds it appropriate for resolution without oral argument.  Fed. R. Civ. P. 78; Local Rule 7-15.  The Court also VACATES the Scheduling Conference set for that day.  For the reasons below, the motion to dismiss is GRANTED and the motion for a more definite statement is DENIED as MOOT.

**FACTUAL ALLEGATIONS**

**A.   Introduction**

    This is yet another case in the saga involving the City's attempts to regulate the proliferation of commercial billboards in Los Angeles.  This case, however, raises only narrow as-applied claims for declaratory and injunctive relief and damages based on the City's classification of Plaintiff's proposed signs as commercial, which are prohibited by the City's ordinance regulating signs throughout the City (the "Sign Ordinance").  (Compl. ¶ 26 ("The only real issue in dispute is whether the content of the initial proposed sign, and other proposed signs, is commercial, and thus prohibited by the Sign Regulations, or noncommercial, and thus permitted.").)  In denying a motion for a preliminary injunction, the Court already concluded on a nearly identical record that the City properly classified Plaintiffs' proposed sign as commercial, which barred Plaintiffs' claims.  (Docket No. 25.)  The Court reaches the same conclusion here.

**B.   The Sign Ordinance**

    Article 4.4 of the Los Angeles Municipal Code ("LAMC"), which contains the City's Sign Ordinance, does not prohibit signs bearing "ideological, political, or other noncommercial message[s]" if they are otherwise permitted by that Article.  LAMC § 14.4.4(A).  It does require a permit for any off-site commercial sign, which is defined as "a sign that displays any message directing attention to a business, product, service, profession, commodity, activity, event, person, institution or any other commercial message, which is generally conducted, sold, manufactured, produced, offered or occurs elsewhere than on the premises where the sign is located."  Id. § 14.4.2. Plaintiffs' proposed sign would be an off-site "temporary" sign under

the City's Sign Ordinance, defined as "[a]ny sign that is to be maintained for a limited duration, not to exceed 30 days, including paper signs and other signs that are not permanently affixed to the ground or building."  Id. § 14.4.2.   Temporary signs are allowed under the following circumstances:

**Sec. 14.4.16.   TEMPORARY SIGNS.**

A.   **Permit Required.**   Notwithstanding any other provision of this article, a building permit shall be required for a temporary sign, pennant, banner, ribbon, streamer or spinner, other than one that contains a political, ideological or other noncommercial message. The permit application shall specify the dates being requested for authorized installation and the proposed location.

B.   **Area.**

1.   The combined sign area of temporary signs shall not exceed two square feet for each foot of street frontage.

2.   The combined sign area of temporary signs, when placed upon a window and any other window signs shall not exceed a maximum of ten percent of the window area.

C.   **Time Limit.**

1.   Temporary signs that require a permit shall be removed within 30 days of installation and shall not be reinstalled for a period of 30 days of the date of removal of the previous sign.   The installation of temporary signs shall not exceed a total of 90 days in any calendar year.

2.   Temporary signs that do not require a permit shall be removed within 30 days of the date of installation of the sign.

D.   **Location.**   Temporary signs, including those that do not require a building permit, may be tacked, pasted or otherwise temporarily affixed to windows and/or on the walls of buildings, barns, sheds or fences.

1          E.    **Construction.**  Temporary signs may contain or consist of posters, pennants, ribbons, streamers or spinners.  Temporary signs may be made of paper or any other material.  If the temporary sign is made of cloth, it shall be flameproofed when the aggregate area exceeds 100 square feet.  Every temporary cloth sign shall be supported and attached with stranded cable of 1/16-inch minimum diameter or by other methods as approved by the Department of Building and Safety.

Id. § 14.4.16.

Two other provisions of the Sign Ordinance prohibit certain signs located near freeways:

**Sec. 14.4.5.   HAZARD TO TRAFFIC.**

        A.    **Prohibition.**  No sign or sign support structure shall be erected, constructed, painted or maintained, and no permit shall be issued, if the sign or sign support structure, because of its location, size, nature or type, constitutes a hazard to the safe and efficient operation of vehicles upon a street or a freeway, or which creates a condition that endangers the safety of persons or property.

        B.    **Hazard Referral.**  The Department of Building and Safety shall refer the following to the Department of Transportation for hazard evaluation and determination prior to the issuance of a building permit:

           1.   All permit applications for signs that will be visible from and are located within 500 feet of the main traveled roadway of a freeway; and

           2.   All other permit applications and any signs that are determined by the Department of Building and Safety to have a potential for hazard.

        C.    **Hazard Determination.**  The Department of Transportation shall return to the Department of Building and Safety each application so referred to it together with a statement of its determination.  If the Department of Transportation determines that the sign or sign support structure will constitute a hazard, the Department of Building and Safety shall deny the application for permit.

**Sec. 14.4.6.   FREEWAY EXPOSURE.**

    A.    **New Signs.**  No person shall erect, construct, install, paint, maintain, and no building or electrical permit shall be issued for any sign or sign support structure within 2,000 feet of a freeway unless the Department of Building and Safety has first determined that the sign will not be viewed primarily from a main traveled roadway of a freeway or an on-ramp/off-ramp. However, at the termination of an off-ramp, any wall sign located along the front line may be viewed primarily from the off-ramp.

        The phrase "viewed primarily from" shall mean that the message may be seen with reasonable clarity from a greater distance by a person traveling on the main traveled roadway of a freeway or on-ramp/off-ramp than by a person traveling on the street adjacent to the sign.

Id. §§ 14.4.5, 14.4.6.  The Sign Ordinance specifically provides that temporary signs are subject to these traffic hazard and freeway exposure provisions.  Id. § 14.4.3(D).

**C.   Plaintiffs' Business and Proposed Sign**

Plaintiff Wayne Charles is in the business of leasing wall space for posting and operating signs bearing "noncommercial messages." (Compl. ¶ 1.)  Earlier this summer, he traveled to Los Angeles to investigate opportunities to post signs; in doing so, he reviewed the Sign Ordinance and concluded he could post temporary signs for thirty days.  (Compl. ¶ 6.)  He eventually found a building at 1651 South Central Avenue, leased by Plaintiff Fort Self Storage, Inc. ("Fort"). (Compl. ¶ 8.)  Wayne entered an agreement with Fort to lease wall space to post the billboard at issue here.  (Compl. ¶ 9.)

Plaintiffs allege that the signs to be posted "will bear content related to motion pictures, theatrical productions, television and radio programming, music, books, newspapers, paintings and other works

5

of art." (Compl. ¶ 11.) Plaintiffs attached to the complaint photographs of the content of only their first proposed sign: an advertisement bearing the logo for the television show "E! News" on the Entertainment Network and images of the show's two hosts, Ryan Seacrest and Giuliana Rancic. (Compl. ¶ 14, Ex. A.) Because Plaintiffs allege that this sign is noncommercial, Plaintiffs did not apply for a permit to post this sign, but they have not posted it or any other sign "based on [] knowledge that the City has recently jailed and fined individuals who it believes have violated the Sign Regulations," and Plaintiffs fear that the City would enforce the Sign Ordinance against it. (Compl. ¶ 13.)

Plaintiffs approached the City about posting this sign, claiming it to be noncommercial, and the City eventually sent Plaintiffs a letter indicating that the sign was commercial, would violate the Sign Ordinance, and warned Plaintiffs that criminal fines and other penalties could accrue from posting non-permitted commercial signs. (Compl. ¶ 23; Compl., Ex. B.) The letter referred to the Sign Ordinance's permitting requirements for off-site, supergraphic, and temporary signs, but did not refer specifically to the Traffic Hazard or Freeway Exposure provisions. (Compl., Ex. B.) The letter did note that the "subject signs may additionally violate other provisions of state or local law." (Id.)

Plaintiffs filed the instant complaint on September 29, 2010, seeking a declaratory judgment that its proposed signs are all noncommercial and exempt from the City's permitting and other restrictions on commercial billboards (Compl. ¶¶ 25—28) and seeking an injunction preventing the City from enforcing the Sign Ordinance against Plaintiffs' allegedly noncommercial signs (Compl. ¶¶ 35—39).

Plaintiff also allege an equal protection claim that, "by prohibiting Plaintiffs from posting their proposed signs, but allowing other favored entities and organizations to post similar signs bearing similar content, the City has violated Plaintiffs' right to equal protection." (Compl. ¶ 32.)  Plaintiffs further seek damages pursuant to 42 U.S.C. § 1983.  (Compl. ¶ 34.)

Plaintiffs moved for a temporary restraining order on September 29, 2010, which was denied two days later.  (Docket No. 7.) Plaintiffs then filed a motion for a preliminary injunction, which was denied on November 25, 2010.  (Docket No. 25.)  Plaintiffs have appealed that denial.  (Docket No. 27.)  The City has now moved to dismiss all of Plaintiffs' claims on grounds similar to those raised in its opposition to Plaintiffs' motion for a preliminary injunction. Particularly, the City argues that: (1) Plaintiffs lack standing to assert their claims; (2) Plaintiffs' claims are not ripe; and (3) Plaintiffs have failed to allege claims upon which relief can be granted.  The City also moves for a more definite statement as to the other signs Plaintiffs propose to erect after the E! News sign is removed.

### LEGAL STANDARD

A complaint survives a motion to dismiss under Rule 12(b)(6) if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief," which does not require "detailed factual allegations," but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  <u>Ashcroft v. Iqbal</u>, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009).  A claim must be "plausible on its face," which means that the Court can "draw the reasonable inference that the defendant is liable for the mis0conduct alleged."

1 Id.; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In

2 other words, "a plaintiff's obligation to provide the grounds of his

3 entitlement to relief requires more than labels and conclusions, and a

4 formulaic recitation of the elements of a cause of action will not

5 do." Twombly, 550 U.S. at 555 (internal quotations and alterations

6 omitted). Allegations of fact are taken as true and construed in the

7 light most favorable to the nonmoving party. See Newdow v. Lefevre,

8 598 F.3d 638, 642 (9th Cir. 2010).

9     In analyzing the sufficiency of the complaint, the Court must

10 first look at the requirements of the causes of action alleged. See

11 Iqbal, 129 S. Ct. at 1947. The Court may then identify and disregard

12 any legal conclusions, which are not subject to the requirement that

13 the Court must accept as true all of the allegations contained in the

14 complaint. Id. at 1949. The Court must then decide whether well-

15 pleaded factual allegations, when assumed true, "plausibly give rise

16 to an entitlement to relief." Id. at 1950. In doing so, the Court

17 may not consider material beyond the pleadings, but may consider

18 judicially noticeable documents, documents attached to the complaint,

19 or documents to which the complaint refers extensively or which form

20 the basis of the plaintiff's claims in the complaint. See United

21 States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

22     A defendant may compel a more definite statement under Rule 12(e)

23 when the complaint "is so vague or ambiguous that the party cannot

24 reasonably prepare a response." Rule 12(e) relief is warranted where

25 "the complaint is so indefinite that the defendants cannot ascertain

26 the nature of the claims being asserted and 'literally cannot frame a

27 responsive pleading.'" Hubbs v. County of San Barnardino, 538 F.

28 Supp. 2d 1254, 1262 (C.D. Cal. 2008).

1                              **DISCUSSION**

2        **A.    Jurisdiction**

3            The City has moved to dismiss Plaintiffs' claims for lack of

4    jurisdiction pursuant to Rule 12(b)(6), but the Court must construe it

5    as a motion brought pursuant to Rule 12(b)(1).  See Corrie v.

6    Caterpillar, Inc., 503 F.3d 974, 980 (9th Cir. 2007) ("[W]hen a motion

7    to dismiss attacks 'the substance of the complaint's jurisdictional

8    allegations,' we treat it as brought under Rule 12(b)(1), even if it

9    was 'improperly identified by the moving party as brought under Rule

10   12(b)(6).'").  In adjudicating the motion, then, "the court may expand

11   its review and 'rely on affidavits or any other evidence properly

12   before the court.'"  Id. at 980.

13           This distinction is significant in this case because the City has

14   submitted a declaration from the Principal Inspector for the Los

15   Angeles Department of Building and Safety, who testified as to the

16   location of Plaintiffs' proposed sign and its proximity to the nearby

17   freeway and city streets.  The City has requested judicial notice of

18   the declaration and supporting photographs, but this evidence is

19   subject to reasonable dispute and therefore not judicially noticeable.

20   See Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 858 n.3 (9th Cir.

21   2008).  Pursuant to Corrie, the Court may treat the City's attack on

22   the Court's jurisdiction as a motion to dismiss under Rule 12(b)(1)

23   and may consider the City Inspector's declaration in resolving the

24   jurisdictional issues, even if not properly subject to judicial

25   notice.  See 503 F.3d at 982.  In any case, even considering this

26   extrinsic evidence, the Court concludes that Plaintiffs have standing

27   and the issues are ripe for adjudication.

28

The City raises several arguments that it believes undermine jurisdiction in this case: (1) Plaintiffs have failed to demonstrate injury-in-fact for standing purposes because they did not allege an agreement between themselves and any sign customer; (2) Plaintiffs' injury would not be redressable because independent restrictions in the Sign Ordinance would preclude their signs, regardless of whether they are commercial or noncommercial; and (2) Plaintiffs' claims are not ripe because they have not erected any proposed signs and the City has not taken any enforcement action against them.

### 1. <u>Standing</u>

"Standing" is an essential element to the case-or-controversy requirement of Article III of the U.S. Constitution. <u>Wolfson v. Brammer</u>, 616 F.3d 1045, 1056 (9th Cir. 2010). The "'irreducible constitutional minimum'" of standing requires the party asserting jurisdiction to establish three elements: "(1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) causation; and (3) a likelihood that a favorable decision will redress the injury." <u>Id.</u>

### a. <u>Injury-in-fact</u>

The City argues that Plaintiffs have not alleged a "concrete and particularized" injury for three reasons: (1) Plaintiffs never applied for and obtained a denial of a permit; (2) Plaintiffs were never subject to an order to comply for having installed an illegal sign; and (3) Plaintiffs have not alleged they lost any profit from the "inability to satisfy an existing business contract." (Mot. 7.) The basic premise of the City's arguments is that the proposed E! News billboard is the message from another entity, not Plaintiffs, so Plaintiffs have not been personally injured by the City's Sign

1  Ordinance.  However, Plaintiffs allege that Plaintiff Charles is in

2  the business of leasing sign space to post signs, that he intends to

3  post signs on Plaintiff Fort's property, and the City has threatened

4  enforcement actions if Plaintiffs post their proposed E! News sign.

5  The reasonable inference from these allegations is that Plaintiffs

6  will be personally injured by posting signs they believe they have a

7  right to post.  That is sufficient to satisfy the injury-in-fact

8  requirement for standing.

9                  b.  <u>Redressability</u>

10       The City argues that the third standing requirement is missing

11  here because, even if Plaintiffs' signs are noncommercial, they would

12  be barred by independent, unchallenged provisions of the Sign

13  Ordinance.  <u>See Get Outdoors II, LLC v. City of San Diego</u>, 506 F.3d

14  886, 892-84 (9th Cir. 2007).  In <u>Get Outdoors</u>, billboard companies

15  sought sign permits that were denied because they violated a ban on

16  off-site signs; the city later argued that they would have been

17  independently barred by the city's height and size restrictions.  <u>Id.</u>

18  at 889-90.  As a result, the companies' injuries would only be

19  redressed — that is, they would be permitted to erect their signs — to

20  the extent that both the size and height restrictions and the off-site

21  ban were found invalid.  <u>Id.</u> at 893.  Because the size and height

22  restrictions were valid and could have prohibited the billboards

23  independently of any other restriction, the companies lacked standing

24  to challenge the off-site sign ban.  <u>Id.</u> at 894.

25       Relying on <u>Get Outdoors</u>, the City claims that, even if the Court

26  were to find Plaintiffs' E! News sign to be noncommercial, it could

27  not be erected without violating the Hazard to Traffic and Freeway

28  Exposure restrictions in the Sign Ordinance.  LAMC §§ 14.4.5, 14.4.6.

1    However, the Court is not convinced that Plaintiffs' sign would be

2    barred by these provisions if it were considered noncommercial.

3         First, the City has not demonstrated that the Hazard to Traffic

4    provision would apply to Plaintiffs' sign if it were deemed

5    noncommercial and exempt from permitting requirements.  While the

6    language in subsection (A) suggests such a conclusion,[1] the City does

7    not invoke subsection (A) to argue that Plaintiffs' sign would be

8    banned even if noncommercial.  Instead, the City argues that

9    subsections (B) and (C) bar Plaintiffs' sign because Plaintiffs did

10   not first apply for a permit.  In the words of the City, "[w]ithout a

11   permit application, the Department of Building and Safety could not

12   make the required hazard to traffic determination and referral to the

13   Department of Transportation."  (Mot. 10.)  However, temporary

14   noncommercial signs do not need to be permitted under the Sign

15   Ordinance.  Thus, if Plaintiffs' sign were deemed noncommercial, there

16   would be no permit application to refer to the Department of

17   Transportation and subsections (B) and (C) would not apply to bar

18   Plaintiffs' sign.

19        The City argues that subsection (B) does leave open the

20   possibility that a noncommercial sign could be a traffic hazard even

21   without obtaining a permit because that section requires that all

22   "other permit applications and <u>any signs that are determined by the</u>

23   <u>Department of Building and Safety to have a potential for hazard</u>" be

24   referred to the Department of Building and Safety.  § 14.4.5(B)(2)

25   _____

26   [1]That subsection prohibits <u>erecting any sign</u> and issuing any sign
     permit "if the sign or sign support structure, because of its
     location, size, nature or type, constitutes a hazard to the safe and
27   efficient operation of vehicles upon a street or a freeway, or which
     creates a condition that endangers the safety of persons or property."
28   LAMC § 14.4.5(A).

1   (emphasis added).  But the prefatory statement in subsection (B) ("The

2   Department of Building and Safety shall refer the following to the

3   Department of Transportation for hazard evaluation and determination

4   prior to the issuance of a building permit . . .") and the directive

5   in subsection (C) ("The Department of Transportation shall return to

6   the Department of Building and Safety each application so referred to

7   it together with a statement of its determination.") still contemplate

8   the issuance of a permit after referral and the City has offered no

9   evidence to suggest that noncommercial signs would be subject to this

10  provision.  The Court is not convinced that section 14.4.5(B) and (C)

11  would independently bar Plaintiffs' sign if it were deemed

12  noncommercial.

13       The application of the Freeway Exposure restriction in section

14  14.4.6 presents a closer question.  It bans all signs within 2,000

15  feet of a freeway, unless the Department of Building and Safety

16  determines that a sign will not be "viewed primarily from a main

17  traveled roadway of a freeway or on-ramp/off-ramp."  LAMC § 14.4.6.

18  The City has offered evidence (and Plaintiffs do not dispute) that the

19  sign Plaintiffs propose will be erected twelve feet from the 10

20  Freeway to the south and 27 feet from the westbound on-ramp at 16th

21  Street to the north.  (Zamperini Decl. ¶ 5.)  From the photograph

22  attached to the complaint showing the placement of the sign would go,

23  it appears that the sign would face the 10 Freeway.  (Compl., Ex. A.)

24  While the photographs suggest that Plaintiffs' signs would fall within

25  this provision, the City has not offered any evidence that the

26  provision would actually be enforced to prohibit the sign.  The City

27  did not cite the provision in its enforcement letter or offer a

28  declaration from any City official that the sign would be barred by

13

1   this provision, and that evidence is necessary to demonstrate that

2   this provision would have been a "secondary cause" of the rejection of

3   Plaintiffs' sign.   See Get Outdoors II, 506 F.3d at 892 (finding the

4   "secondary cause" of permit denials were size and height restrictions

5   based on affidavits that the provision would have been enforced, even

6   though permit denials themselves did not cite size and height

7   restrictions as grounds for denial).   The City's general reference to

8   additional unidentified violations in its letter to Plaintiffs does

9   not demonstrate that the City intended to enforce the Freeway Exposure

10  provision against Plaintiffs, especially in the absence of any

11  evidence that the City regularly applied that provision to similar

12  signs.   Because the Court cannot be certain that this provision would

13  bar Plaintiffs' signs, a favorable decision could conceivably redress

14  Plaintiffs' alleged injury.[2]   Thus, Plaintiffs have demonstrated

15  standing to pursue their challenges to the Sign Ordinance as to their

16  proposed E! News sign.[3]

17

18      [2]Plaintiffs' other arguments as to why the Freeway Exposure would
    not apply lack merit.   First, the Freeway Exposure restriction is not
19  inoperative because the Ninth Circuit's decision in World Wide Rush,
    LLC v. City of Los Angeles, 606 F.3d 676, 684—87 (9th Cir. 2010) did
20  not explicitly deem it "constitutional"; the Court rejected the only
    ground upon which this Court found the provision invalid and the City
21  was free at that point to revive it.   Second, nothing in this
    restriction suggests that it is a permitting requirement like the
22  Hazard to Traffic provision.   It neither mentions a "permit" nor gives
    "permission" to do anything; it simply imposes a condition on all
23  signs in a specified area prior to the issuance of a permit for a
    commercial sign or before erection of a noncommercial sign.   Third,
24  this section plainly applies to noncommercial signs.   Section 14.4.4
    permits noncommercial signs "otherwise permitted by this article."   If
25  a noncommercial sign is prohibited by the Freeway Exposure provision,
    then it would not "otherwise [be] permitted by" the Sign Ordinance.

26

27      [3]The City alternatively argues that Plaintiffs' injuries are not
    redressable because they have not alleged the existence of a contract
28  between them and the Entertainment Network, which owns the E! News
                                                        (continued...)

2. <u>Ripeness</u>

Claims are constitutionally ripe only when they present injuries that are "'definite and concrete, not hypothetical or abstract,'" which can include pre-enforcement injuries, so long as the plaintiff has shown a "<u>genuine</u> threat of <u>imminent</u> prosecution.'" <u>Wolfson</u>, 616 F.3d at 1058 (emphasis in original). A claimed threat of prosecution is "genuine" when: (1) the plaintiff has articulated a concrete plan to violate the law at issue; (2) the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) there is a history of past prosecution under or enforcement of the challenged statute. <u>Id.</u>

Plaintiffs' claims regarding the E! News billboard are ripe even though they have not erected signs yet and have not been forced to take them down. <u>Cf. Nat'l Adver. Co. v. City of Miami</u>, 402 F.3d 1335, 1339-40 (11th Cir. 2005) (finding First Amendment challenge to billboard law unripe because plaintiff "never properly pursued its claim through the administrative process that the City's zoning ordinance made available to them" and never obtained a denial of a permit application). Plaintiffs presented to the City the E! News billboard and claimed it was exempt from the City's permitting requirement because it was noncommercial. The City disagreed with Plaintiffs' assessment, deemed the billboard commercial, and threatened criminal and civil sanctions if Plaintiffs were to erect the billboard without a permit. That more than satisfies the first

---

[3](...continued)
television show, providing for the show to be advertised on Plaintiffs' sign. However, the Court can reasonably infer from the complaint that the Entertainment Network would be paying for the sign to be posted and, in any case, the Court believes that Plaintiffs could plead this relationship if required to do so. (Opp'n 12 n.2.)

two requirements outlined in Wolfson.  The third criterion is also
satisfied: the Court is acutely aware of the City's efforts to enforce
the sign ordinance against other companies, given the many lawsuits
pending before this Court.  Thus, there is little doubt that
Plaintiffs' challenge to the application of the Sign Ordinance to the
E! News billboard is ripe for review.[4]  See Wolfson, 616 F.3d at
1059–60.[5]

Plaintiffs further suggest, however, that they would like to
erect unidentified signs that would contain "content related to motion
pictures, theatrical productions, television and radio programming,
music, books, newspapers, paintings and other works of art."  (Compl.
¶ 11.)  While Plaintiffs' claims related to the proposed E! News sign
are ripe, their claims are not ripe as to other signs, whose content
has only been vaguely identified and which may or may not be subject
to future actions based upon the nature of their content.  See
Wolfson, 616 F.3d at 1060 (finding ripeness exists where "the issues
raised are primarily legal, do not require further factual
development, and the challenged action is final."); see also id. at
1064 (explaining that a claim is not ripe "'if it rests upon
contingent future events that may not occur as anticipated, or indeed
may not occur at all.'").  Further, an opinion on the content of any

---

[4]To the extent the City is arguing that Plaintiffs' claims are
unripe for not seeking and being denied a permit before filing suit,
that contention hinges on the merits of whether Plaintiffs' sign is
properly classified as commercial or noncommercial.  Thus, the Court
will not address this question separately from the merits.

[5]The City argues that no causal connection exists between
Plaintiffs' alleged injury and the City's Sign Ordinance because the
City has not specifically enforced the Sign Ordinance against
Plaintiffs.  That argument is identical to the City's ripeness
argument and fails for the same reasons.

sign beyond the one sign whose content has been identified would be an impermissible advisory opinion.  See Golden v. Zwicker, 394 U.S. 103, 108 (1969).  As a result, the allegations directed at future, unidentified signs are not ripe and must be dismissed.

**B.   Rule 12(b)(6) Failure to State a Claim**

      1.   Free Speech Violations

The Sign Ordinance defines an "off-site" commercial sign as "a sign that displays any message directing attention to a business, product, service, profession, commodity, activity, event, person, institution or any other commercial message, which is generally conducted, sold, manufactured, produced, offered or occurs elsewhere than on the premises where the sign is located."  LAMC § 14.4.2. Plaintiffs allege that, using this definition, the City reviewed Plaintiffs' proposed E! News sign and concluded it was commercial and required a permit.  The Court concludes that the City's assessment was both legally correct and reasonable, and Plaintiffs have failed to state a claim for free speech violations.[6]

As a general matter, the City may constitutionally distinguish between commercial and noncommercial billboards.  See Outdoor Sys., Inc v. City of Mesa, 997 F.2d 604, 610, 613 (9th Cir. 1993); see also Maldonado v. Morales, 556 F.3d 1037, 1045—46 (9th Cir. 2009).  In order to apply that distinction, the City may also constitutionally vest officials with the authority to determine when a sign is commercial, since that neither vests an official with unfettered

_____

[6]For the same reasons the Court rejects the City's standing arguments, the Court rejects the City's argument that an opinion on whether Plaintiffs' E! News sign is commercial or noncommercial would be advisory.  Plaintiffs have raised a concrete claim and have demonstrated probable injury if they were to erect their E! News sign.

1    discretion nor creates an unconstitutionally vague permitting scheme.

2    See Outdoor Sys., 997 F.2d at 613.; Nat'l Adver. Co. v. City & Cnty.

3    of Denver, 912 F.2d 405, 410 (10th Cir. 1990); Major Media of the Se.,

4    Inc. v. City of Raleigh, 792 F.2d 1269, 1272-73 (4th Cir. 1986).  As

5    the Ninth Circuit explained in Outdoor Systems:

6              Because our First Amendment jurisprudence
               recognizes a distinction between commercial and
7              noncommercial speech, government officials have to
               place a particular message into one or the other
8              category for purposes of regulation.  The
               potential difficulty of that categorization in
9              itself does not render the regulations
               unconstitutional. . . . [T]he city officials can
10             and must rely on judicial precedent to determine
               what is commercial speech . . . [and] sufficient
11             guidance in categorizing speech as commercial or
               noncommercial is provided by various decisions of
12             the Supreme Court.

13   997 F.2d at 613 (internal citations omitted).

14       The Supreme Court has identified three characteristics that, in

15   combination, indicate speech is commercial: (1) its advertising

16   format; (2) its reference to a specific product; and (3) an underlying

17   economic motive of the speaker.  See Bolger v. Youngs Drug Prods.

18   Corp., 463 U.S. 60, 67 (1983).  However, the Court in City of

19   Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 422-23 (1993),

20   seemed to suggest a narrower definition of commercial speech as speech

21   that, at its core, "propos[es] a commercial transaction."  The Ninth

22   Circuit has variously followed Discovery Network[7] and Bolger,[8] but has

23   specifically noted that both remain good law.  See Ass'n of Nat'l

24   Advers. v. Lungren, 44 F.3d 726, 730 (9th Cir. 1994); Outdoor Sys.,

25   _____

26       [7]See Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894, 906 (9th
     Cir. 2002); Hoffman v. Capital Cities/ABC, Inc., 255 F.3d 1180, 1185
27   (9th Cir. 2001).

28       [8]See Ass'n of Nat'l Advers. v. Lungren, 44 F.3d 726, 728 (9th
     Cir. 1994).

997 F.2d at 610.  Under either test, the commercial/noncommercial distinction is based on common sense, keeping in mind that commercial speech must be examined "'carefully to ensure that speech deserving of greater constitutional protection is not inadvertently suppressed.'" Discovery Network, 507 U.S. at 423.[9]

Under either the Bolger test or the Discovery Network test, common sense leads to but one conclusion in this case: Plaintiffs' billboard was properly classified as commercial.  Plaintiffs admit that they have an economic interest in erecting advertising signs like the E! News sign.  (Compl. ¶ 1.)  The sign uses the E! News logo and images of the show's hosts to advertise a product in order to attract viewers.  By increasing viewership, the show generates ratings, which then translate into higher prices for commercials aired during the show.  The sign surely faces the busy 10 Freeway for this very purpose.  And the proposed sign contains no even arguably noncommercial content, indicating that its purpose is purely to generate revenue, rather than to disseminate any noncommercial message.

Plaintiffs cite a series of state and federal cases to argue that advertising for noncommercial speech is itself noncommercial speech subject to full First Amendment protection.[10]  See, e.g., Page v. Something Weird Video, 960 F. Supp. 1438, 1443-44 (C.D. Cal. 1996);

_____

[9]The tests for the distinction between commercial and noncommercial speech under the California Constitution are the same as under the First Amendment.  See Kasky v. Nike, 27 Cal. 4th 939, 958-59 (2002).

[10]In a footnote in Bolger, the Supreme Court suggested this might be possible.  Bolger, 463 U.S. at 68 n.14 (noting that advertising of an activity itself protected by the First Amendment may not be commercial).

1  <u>Lane v. Random House, Inc.</u>, 985 F. Supp. 141, 152 (D.D.C. 1995);

2  <u>Guglielmi v. Spelling-Goldberg Prods.</u>, 25 Cal. 3d 860, 872-73 (1979)

3  (Bird, C.J., concurring); <u>Rezec v. Sony Pictures Ent., Inc.</u>, 116 Cal.

4  App. 4th 135, 140-44 (2004); <u>Polydoros v. Twentieth Cent. Fox Film</u>

5  <u>Corp.</u>, 67 Cal. App. 4th 318, 324-25 (1997).  All of these cases except

6  <u>Rezec</u> involved arguments that the First Amendment protected the use of

7  an individual's name or likeness, which was a defense to various state

8  tort claims, such as the right to publicity, <u>see</u> <u>Page</u>, 960 F. Supp. at

9  1443, or defamation, <u>see</u> <u>Lane</u>, 985 F. Supp. at 149.  In that

10 circumstance, the courts extended the First Amendment protection to

11 the use of the individual's likeness in advertising for the underlying

12 protected speech.  <u>See, e.g.</u>, <u>Guglielmi</u>, 25 Cal. 3d at 872—73.  In

13 these cases, the protection extended to the advertising at issue

14 because it was merely "adjunct" or "incidental" to the core protected

15 noncommercial speech.  <u>See</u> <u>id.</u>; <u>Page</u>, 960 F. Supp. at 1443.

16      Unlike these cases, the proposed E! News billboard contains no

17 noncommercial content, such that the advertising could be considered

18 merely an "adjunct" to the underlying noncommercial speech.  <u>See</u>

19 <u>Guglielmi</u>, 25 Cal. 3d at 872—73.  In this respect, the Court finds the

20 decision in <u>Rezec</u> instructive.  In that case, the plaintiffs sued a

21 movie studio under state law for the false portrayal in advertising of

22 a fictitious critic giving favorable reviews of several movies.  116

23 Cal. App. 4th at 138.  Invoking many of the same cases Plaintiffs cite

24 here, the studio moved to strike the complaint on the ground that the

25 advertisements at issue was noncommercial speech because they related

26 to movies, which were considered core noncommercial speech not

27 properly subject to the tort suit.  <u>Id.</u> at 141—42.  The court denied

28 the motion, reasoning that, "[h]ad the advertisements here been

'merely . . . adjunct[s] to the exhibition of the film[s]," as in Guglielmi, "such as by using photographs of actors in the films, Sony would have a point because, just as the films are noncommercial speech, so is an advertisement reflecting their content."  Id. at 142. Yet, the advertising at issue did not "reflect any character or portion of the films," but rather a fictitious critic's favorable opinions of the films, so they were purely commercial speech intended to sell the films.  Id. at 142—43.  Here, too, Plaintiffs' billboard does not reflect any content of E! News, apart from the E! News logo and photographs of the hosts, which were undoubtedly used to advertise the E! News program.  Thus, the cases cited by Plaintiff do not demonstrate that the E! News sign is anything but commercial.[11]

        Perhaps most important, unlike these cases, "'[w]e deal here with the law of billboards,'" which is a "'method of communicating ideas . . . unto itself.'"  See World Wide Rush, 606 F.3d at 684.  In this context, recent Ninth Circuit cases have made clear that the Court should defer to the City's "reasonably graduated response to different aspects of a problem."  Metro Lights, LLC v. City of Los Angeles, 551 F.3d 898, 910 (9th Cir. 2009).  Given that the City may constitutionally distinguish between commercial and noncommercial signs, see Outdoor Systems, 997 F.2d at 610, and may constitutionally grant officials authority to make that distinction, see id. at 613, the City must be given some space to apply the tests for commercial speech and to reach reasonable judgments as to what is and is not

_____

        [11]For these same reasons, the E! News billboard does not fall within the category of noncommercial speech that is either promoted in a paid advertisement or carried in a form sold for a profit.  See Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 761 (1976).

commercial, lest federal courts become the first-line arbiters of
hundreds of thousands of billboards to be erected across the country.
Plaintiffs here have not alleged that the City in this case has
attempted to use the commercial/ noncommercial distinction to suppress
noncommercial speech and the City's judgment that the E! News
billboard was commercial was both legally correct and reasonable.

Plaintiffs do not challenge the City's regulations or permitting
requirements directed at commercial signs.  Thus, because Plaintiffs'
sign was properly deemed commercial, the City can prohibit it as an
unpermitted commercial sign and Plaintiffs have failed to state a
claim for free speech violations.  The Court need not address any of
the City's other arguments directed specifically at Plaintiffs' claims
for declaratory and injunctive relief.

### 2.  Equal Protection Claim

Plaintiffs conclusorily allege that, "by prohibiting Plaintiffs
from posting their proposed signs, but allowing other favored entities
and organizations to post similar signs bearing similar content, the
City has violated Plaintiffs' right to equal protection." (Compl. ¶
32.)  Plaintiffs do not allege which particular signs were treated
more favorably, how they were treated more favorably, or why.  While
these threadbare allegations provide little guidance on the issue,
Plaintiffs explained the nature of this claim in their opposition:
"Plaintiffs have alleged that they are similarly situated to other
favored entities which have been permitted to post noncommercial
temporary signs, but that the City has intentionally treated the two
parties differently."  (Opp'n 20 (emphasis added).)

Generally, disparate treatment by a governmental entity that does
not implicate a fundamental right or a suspect classification is

permissible so long as it bears a rational relationship to a
legitimate state interest.  Lockary v. Kayfetz, 917 F.2d 1150, 1155
(9th Cir. 1990).[12]  Plaintiffs' complaint and arguments appear to
raise both a traditional "classification" equal protection claim and a
"class of one" equal protection claim.  In a "classification" claim,
the action challenged targets individuals for differing treatment
based on a particular characteristic, while treating similarly
situated individuals who lack that same characteristic differently.
See Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008).
In a "class of one" claim, the action challenged targets the plaintiff
individually for arbitrary or irrational treatment.  Id.; Valley
Outdoor, Inc. v. City of Riverside, 446 F.3d 948, 955 (9th Cir. 2006)
(recognizing the "class of one" theory in equal protection challenge
to sign permitting ordinance); Lockary, 917 F.2d at 1155.

To the extent Plaintiffs raise a "classification" claim, it fails
as a matter of law because the City may constitutionally distinguish
between commercial and noncommercial billboards, restricting the
former, while permitting the latter.  See Outdoor Sys., 997 F.2d at
610—11; see also Maldonado, 556 F.3d at 1045—46.  Because the city
properly classified Plaintiffs' sign as commercial, it could properly
ban it, while allowing noncommercial signs.  Thus, Plaintiffs cannot
allege a "classification" equal protection claim.

To the extent Plaintiffs invoke a "class of one" theory, they
have failed to state a claim.  Plaintiffs' "class of one" theory
appears to be based upon the City's "improper or unlawful" refusal to
allow them to erect their noncommercial sign, while allowing others to

---

[12]Plaintiffs do not claim that this case involves any fundamental
right or suspect classification.

erect noncommercial signs.  <u>See</u> <u>Valley Outdoor</u>, 446 F.3d at 955.
However, as the Court concluded above, the City properly deemed
Plaintiffs' E! News sign as commercial, so the City did not improperly
or unlawfully refuse to allow Plaintiffs to erect it.  While
Plaintiffs might argue that the City has selectively enforced the
commercial/noncommercial distinction, "[s]elective enforcement of
valid laws, without more, does not make the [City's] action
irrational." <u>Freeman v. City of Santa Ana</u>, 68 F.3d 1180, 1188 (9th
Cir. 1995).  Because the City properly classified Plaintiffs' E! News
sign as commercial, Plaintiffs have not stated a claim for irrational
treatment.  <u>See id.</u> ("Although Freeman contends that other bars in
high crime areas obtained dance permits, the fact remains that the
denial was proper under the ordinance.").

        Furthermore, even if legally cognizable, Plaintiffs do not allege
any specific facts to show that the City's ultimately proper
classification of their sign as commercial was arbitrary, irrational
or pretext for unlawful discrimination.  To the contrary, Plaintiffs
have admitted that they are not uniquely the subject of irrational
enforcement: they allege that they have not erected their signs "based
on knowledge that the City has recently jailed and fined individuals
who it believes have violated the Sign Regulations." (Compl. ¶ 13.)
The Court also takes judicial notice that, far from arbitrarily
enforcing the Sign Ordinance against Plaintiffs here and no one else,
the City has vigorously defended the proliferation of cases brought by
many sign companies challenging the Sign Ordinance.[13]  Thus,

_____

        [13]<u>See, e.g.</u>, <u>World Wide Rush</u>, 606 F.3d at 683—84; <u>Metro Lights</u>,
551 F.3d at 902—03; <u>Show Media Cal., LLC v. City of Los Angeles</u>, No.
CV 09-3270 ABC (JWJx) (C.D. Cal. filed on May 8, 2009); <u>Vanguard</u>
                                                        (continued...)

1    Plaintiffs' "class of one" equal protection claim fails.

2        **C.   Rule 12(e) Motion for More Definite Statement**

3        The City moves for a more definite statement of the content of

4    signs to be posted after the E! News sign is taken down.   Plaintiffs

5    merely allege that future signs "will bear content related to motion

6    pictures, theatrical productions, television and radio programming,

7    music, books, newspapers, paintings and other works of art."   (Compl.

8    ¶ 11.)   Because these claims must be dismissed as unripe, the City's

9    motion for a more definite statement is moot.

10                            **CONCLUSION**

11       Plaintiffs have demonstrated standing to pursue their claims.

12   Plaintiffs have also demonstrated that their challenge to the erection

13   of the E! News billboard is ripe, but have failed to demonstrate that

14   their challenge to future, unidentified signs is ripe.   On the merits,

15   Plaintiffs have failed to state claims for violations of their free

16   speech and equal protection rights.   None of these claims can be cured

17   by amendment, so the Court DISMISSES Plaintiffs' claims WITH

18   PREJUDICE.   See Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.,

19   368 F.3d 1053, 1061 (9th Cir. 2004).   The City's motion for a more

20   definite statement is DENIED as MOOT.

21

22

23   _____

24       [13](...continued)
     Outdoor, LLC v. City of Los Angeles, No. CV 08-6035 ABC (JWJx) (C.D.

25   Cal. filed on Sept. 15, 2008); Paramount Contractors & Developers,
     Inc. v. City of Los Angeles, No. CV 08-5653 ABC (PLAx) (C.D. Cal.

26   filed on Aug. 28, 2008).   The Court takes judicial notice that counsel
     for Plaintiffs represents a billboard company in one of the cases that

27   has challenged the City's Sign Ordinance.   See Figueroa Project 2, LLC
     v. City of Los Angeles, Case No. CV 08-5066 ABC (JWJx) (C.D. Cal.

28   filed Aug. 1, 2008).

The City is ORDERED to lodged a proposed judgment consistent with this Order within 10 days of the filing of this Order.

IT IS SO ORDERED.


DATED: December 1, 2010          _____

                                        AUDREY B. COLLINS
                              CHIEF UNITED STATES DISTRICT JUDGE